Mr. Justice FIELD
delivered tbe opinion of tbe court.
In bis petition to the Board of Land Commissioners, Pacheco represented that in October, 1840, a grant of a tract of land, known by tbe name of Bolsa de San Felipe, was issued to him by Alverado, then Governor of tbe Department of California.
Tbe board adjudged tbe grant to be valid, and confirmed tbe claim of tbe petitioner under it to tbe extent of two square leagues. On appeal, tbe District Court modified tbe decree of tbe board, affirming tbe validity of the title of Pacheco, but limiting it to one square league. From tbis latter decree tbe present appeal is taken by tbe executors of tbe claimant, he having died pending tbe proceedings. Tbe United States were satisfied with the decree, and did not appeal. Tbe case therefore stands in tbis court upon tbe question, whether tbe parties representing tbe claimant are entitled under tbe grant to a confirmation of tbe title to one or two square leagues.
No question can be raised here upon tbe genuineness and authenticity of tbe grant to Pacheco. Tbe Government having declined to appeal, tbe validity of the grant is not open for consideration.
In modifying tbe decree of tbe board, tbe District Court appears to have been influenced by the opinion that tbe grant bad been fraudulently altered after it was issued, so as to purport to convey to tbe grantee two leagues, when it originally conveyed only one. It appears that preceding tbe term leagues tbe word one was originally written in tbe *288 instrument, and was subsequently altered to the word iwo, or to be more accurate, an alteration was thus made in Spanish terms, corresponding with these English words. But, as the counsel of the appellants very justly observes, the grant could not be operative for any purpose except upon the conclusion that the alteration was made before its execution, or if subsequently made, that it was made with the sanction of the granting power. If valid therefore to pass one league, it must be held valid to pass the two leagues which it purports on its face to pass.
It is not necessary, however, to rest our decision upon this consideration. Nor is it necessary to invoke-the presumption which counsel insist the law raises as to the date of the alteration. The authorities upon the latter point are not uniform. Some of them hold, that where there are no particular circumstances of suspicion connected with the alteration, the presumption of law is that the alteration was made contemporaneously with the execution of the instrument, giving as the reason for the conclusion that a deed cannot be altered after its execution without fraud, which is never to be assumed without proof; other authorities hold the presumption to be the other way, and require an explanation of the alteration before the deed can be admitted in evidence.*
In the case under consideration the proofs remove all suspicion from the alteration, whatever may be the presumption of the law. The governor who issued the grant testifies substantially that the alteration was made by his direction, and that the grant was subsequently delivered or redelivered to the grantee. If this were the case, it is immaterial whether the alteration was made before the grant had received his signature or after it had been once delivered. The redelivery after the alteration, if such were the fact, was in legal effect a re-execution of the grant. That *289 some discrepancy should exist in the statements of the governor at different times, with reference to a transaction which had occurred more than eighteen years before, is not surprising. His statements are consistent and positive to the effect that the alteration was made by his direction, and that the grant was delivered or redelivered afterwards; and they disagree only upon the point whether the alteration was made before, or after the grant had been once delivered. The clerk in the office of the secretary, who attested the grant, corroborates the testimony of the governor, that the alteration was made by his direction. The juridical possession of the two leagues, delivered to the grantee soon after the execution of the grant, and the subsequent occupation by him of the premises until his death, a period of nearly twenty years, dissipates whatever doubt might otherwise exist as to the truth of the statement of the governor in this particular.
When the grant to Pacheco was issued there still remained another proceeding to betaken for the investiture of the title. Under the civil, as at the common law, a formal tradition or livery of seizin of the property was necessary. As preliminary to this proceeding the boundaries of the quantity granted had to be established, when there was any uncertainty in the description of the premises. Measurement and segregation in such cases therefore preceded the final delivery of possession. By the Mexican law various regulations were prescribed for the guidance in these matters of the magistrates of the vicinage. The conditions annexed to the grant in the case at bar required the grantee to solicit juridical possession from the proper judge. In compliance with this requirement, within four months after the issue of the grant, he presented the instrument to the judge of the district, and requested him to designate a day for delivering the possession. The judge designated a day, and directed that the adjoining proprietors be cited, and that measurers and counters be appointed. On the day’designated the proprietors appeared, and two measurers and two counters were appointed, and sworn for the faithful discharge of their duties. A line *290 provided for the measurement was produced, and its precise length ascertained. The measurers then proceeded to measure off the land, the judge and the proprietors accompanying them. The measurement being effected, the parties went to the centre of the land, and there the judge directed the grantee to enter into the possession, which he did, and gave evidence of the fact “ by pulling up grass and making demonstrations as owner of the land.” Of-the various steps thus taken, from the appointment of the day to the final act of delivery, a complete record was kept by the judge, and by him transmitted to the grantee after being properly entered upon the “book of possessions.” This record was produced and admitted in evidence, no objection being taken to its genuineness or authenticity. The first document in this record is a copy of the original grant produced to the judge, which specifies two square leagues as the quantity granted. That portion of the record which specifies the quantity measured also declares it to have been two square leagues, or a little more on account of the irregularity of the land. The solemnities attending this official delivery of possession were well calculated to make an impression upon the minds of the spectators, and to preserve the recollection of the act. The ownership, extent, and general location of the land were matters thus brought within the knowledge of the neighborhood, and were no doubt afterwards the subjects of frequent reference among the adjoining proprietors. It is possible, but highly improbable, that serious alteration in the grant as to the quantity of the land, would have escaped observation and exposure. No suspicion on the subject having been suggested for eighteen years, is a circumstance of no little weight to show that no grounds for suspicion ever existed.
The decree of the District Court must be reversed, and that court directed to. enter a decree confirming the claim of the appellants to two square leagues under the grant to Pacheco.
Decree accordingly

 See 2 Taylor on Evidence, $ 161G; 1 Greenleaf on Evidence, \ 564; Doe v. Catomore, 16 Q. B., 745; Simmons v. Rudall, 1 Simons, N. S., 136; Administrators of Beaman v. Russell, 20 Vermont, 205; Jordan v. Stewart, 23 Pennsylvania State, 244.